UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MARVIN D. LOTHER,<br><br>      Petitioner,<br><br>v.<br><br>CHRIS BUESGEN,<br><br>      Respondent. | Case No. 19-CV-981-JPS<br><br>**ORDER** |

  Petitioner Marvin D. Lother ("Lother") brings this petition for a writ of habeas corpus to challenge the revocation of his extended supervision in Kenosha County Case Number 2011CF841 and Racine County Case Number 2013CF778. (Docket #1).[1] Lother's extended supervision was revoked after a hearing at which a witness, L.D., made a hearsay statement that Lother shot her brother, A.D., who was not at the hearing to testify. Lother argues that this statement was inadmissible hearsay and, as such, there was insufficient evidence to revoke his supervision. The parties have fully briefed their respective positions. For the reasons explained below, the Court finds that Lother's petition must be denied. Lother's motion for a hearing (Docket #17) will be denied as moot.

---

[1] "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the prisoner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242). When Lother filed the petition, he was being held at Sturtevant Transitional Facility; therefore, he appropriately named superintendent Lisa Avila as the respondent, and she litigated the case. However, Lother was later transferred to Stanley Correctional Institution. The Court therefore substitutes Chris Buesgen, the warden of Stanley Correctional Institution, as the respondent.

1.  **STANDARD OF REVIEW**

State criminal convictions are generally considered final. Review may be had in federal court only on limited grounds. To obtain habeas relief from a state conviction, 28 U.S.C. § 2254(d)(1) (as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA")) requires the petitioner to show that the state court's decision on the merits of his constitutional claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Brown v. Payton*, 544 U.S. 133, 141 (2005). The burden of proof rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The relevant decision for this Court to review is that of the last state court to rule on the merits of the petitioner's claim. *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006).

A state-court decision runs contrary to clearly established Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [those] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown*, 544 U.S. at 141. Similarly, a state court unreasonably applies clearly established Supreme Court precedent when it applies that precedent to the facts in an objectively unreasonable manner. *Id.*; *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013).

The AEDPA undoubtedly mandates a deferential standard of review. The Supreme Court has "emphasized with rather unexpected vigor" the strict limits imposed by Congress on the authority of federal habeas courts to overturn state criminal convictions. *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). It is not enough for the petitioner to prove the state courts were wrong; he must also prove they acted unreasonably.

*Harrington v. Richter*, 562 U.S. 86, 101 (2005); *Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) ("An 'unreasonable application of' federal law means 'objectively unreasonable, not merely wrong; even "clear error" will not suffice.'") (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)).

Indeed, the petitioner must demonstrate that the state court decision is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (quoting *Harrington*, 562 U.S. at 102). The state court decisions must "be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Hartjes v. Endicott*, 456 F.3d 786, 792 (7th Cir. 2006). Further, when a state court applies general constitutional standards, it is afforded even more latitude under the AEDPA in reaching decisions based on those standards. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

As the Supreme Court has explained, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. Indeed, Section 2254(d) stops just short of "imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *See id.* This is so because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)).

A federal court may also grant habeas relief on the alternative ground that the state court's adjudication of a constitutional claim was

based upon an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2). The underlying state court findings of fact and credibility determinations are, however, presumed correct. *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013). The petitioner overcomes that presumption only if he proves by clear and convincing evidence that those findings are wrong. 28 U.S.C. § 2254(e)(1); *Campbell*, 770 F.3d at 546. "A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey*, 735 F.3d at 949–50 (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). If shown, an unreasonable factual determination by the state court means that this Court must review the claim in question de novo. *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008).

## 2. RELEVANT BACKGROUND

At Lother's extended supervision revocation hearing, L.D. gave the following testimony: at around 4:00 a.m. on December 12, 2016, she awoke to the sound of a door opening downstairs. She heard a gunshot, followed by the sound of her brother, A.D., moaning. L.D. was frightened, but she ran downstairs, where she saw A.D. crawling on the floor. She could not tell where he had been shot, but he said, "my leg, my leg."

The testimony is somewhat circuitous after this, but it seems that A.D. told L.D. that Lother shot him *before* L.D. called the police. (Docket #8-9 at 11:11–15). A.D. said that "V.O." shot him, which was a nickname for Lother. L.D. asked if A.D. meant Lother, and A.D. confirmed. (*Id.* at 10:13–

20). Lother was a neighbor who was friendly with both A.D. and L.D. (*Id.* at 6:24–7:5).

A.D. explained that he and Lother had gotten into an argument because, earlier that evening, Lother had left him stranded in a snowstorm on the other side of town. A.D. had had to walk home in the snow, and he was angry. He said he wanted to punch Lother in the face, but somehow ended up shot, instead. (*Id.* at 8:16–21). L.D. ran upstairs to her phone, which she used to call the police. It is not clear how much time elapsed between her discovery of A.D. and her phone call to the police, but officers were dispatched at 4:22 a.m.

Police arrested Lother for the shooting. An administrative law judge ("ALJ") revoked Lother's extended supervision following a hearing on May 23, 2017, which is the subject of this habeas petition. At the revocation hearing, Lother was represented by counsel, who made objections, cross examined witnesses, and presented an alibi witness. Lother declined to testify on his own behalf. A.D. did not attend the hearing. It is not clear whether A.D. was subpoenaed or otherwise ordered to appear—L.D. stated that she had tried to get him to testify, but he did not want to cooperate.

The hearing also featured testimony from Officer Rassmussen, who interviewed A.D. at the hospital and who generally corroborated L.D.'s testimony that A.D. said that Lother shot him. Lother's attorney objected to Rassmussen's statement as hearsay, but the ALJ overruled the objection. Additionally, Lother's mother testified as an alibi witness: she affirmed that Lother slept at her house that night, that she had last seen him before she went to bed, and that he was at home at 4:30 a.m., when she woke up to go to work. She further explained that she has a dog who barks when people

enter and exit the house; she did not hear the dog bark that night, which suggested that Lother had stayed at home the whole night.

After the hearing, the ALJ formally revoked Lother's extended supervision. (Docket #8-4 at 34). The Division of Hearings and Appeals (the "DHA") affirmed the revocation. (*Id.* at 37). On a common law writ of certiorari to the Racine County Circuit Court, a state court judge issued a reasoned decision and order affirming the revocation. (Docket #1-1). The Wisconsin Court of Appeals summarily affirmed the trial court's decision and order, and the Wisconsin Supreme Court denied Lother's petition for review. (Docket #1-2, #1-3). On habeas review, the Court is tasked with reviewing the highest state court decision on the merits, which, in this case, is the Wisconsin Court of Appeals's summary decision. *Jordan v. Hepp*, 831 F.3d 837, 843 (7th Cir. 2016) (citation omitted).

**3.    ANALYSIS**

    **3.1    Due Process at Revocation Proceeding**

"Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty." *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). Probationers and parolees are thus entitled to preliminary and final revocation hearings. *Id.* These hearings, however, are not full trials. *Morrisey v. Brewer*, 408 U.S. 471, 489 (1972); *Bolling v. Murphy*, No. 10-C-678, 2011 WL 2678838, at *2 (E.D. Wis. July 8, 2011) ("The conditional liberty afforded under Extended Supervision, just as the conditional liberty associated with one's status as a parolee, is a liberty interest protected by the Fourteenth Amendment.") (quoting *Morrisey*, 408 U.S. at 482).

Indeed, at these revocation hearings, guilt of alleged probation, parole, or extended supervision violations need only be proven by a

preponderance of the evidence. *See* Wis. Admin. Code § HA 2.05(6)(f). This is because "revocation is the product of an administrative, civil proceeding." *State ex rel. Washington v. Schwarz*, 620 N.W.2d 414, 419 (Wis. Ct. App. 2000) (quoting *Prison Litig. Reform Act in State ex rel. Cramer v. Schwarz*, 613 N.W.2d 591, 598 (Wis. 2000)). Indeed, the Supreme Court has instructed that a revocation hearing is "a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey*, 408 U.S. at 489; Wis. Admin. Code § HA 2.05(6)(c) ("Evidence gathered . . . in violation of the law may be admitted as evidence at the [revocation] hearing").

In order to comply with the requirements of due process, a revocation hearing must contain the following features:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrisey*, 408 U.S. at 489.

In this case, the fourth factor is at issue: Lother contends he was not afforded the opportunity to confront an adverse witness, A.D., and that the ALJ did not find "good cause" for the lack of confrontation. The Sixth Amendment's confrontation clause requirements, articulated in *Crawford v. Washington*, 541 U.S. 36 (2004), do not apply to revocation hearings. *United*

*States v. Kelley*, 446 F.3d 688, 690–92 (7th Cir. 2006) (discussing a revocation of supervised release). At revocation hearings, it is not the Sixth Amendment but the Fourteenth Amendment that applies.[2]

Thus, the question is whether there was good cause for not allowing Lother to confront and cross-examine A.D. about his statement that Lother shot him. In her order, the ALJ stated that she found "good cause to rely on [A.D.'s] hearsay statements since he was unavailable as a witness, having refused to cooperate with the Department of Corrections to appear and testify." (Docket #8-4 at 36). However, the transcript of the hearing does clearly explain why A.D. was unavailable to testify. It is true that L.D. acknowledged that A.D. did not want to testify, but it is not immediately apparent from the record how the ALJ drew her conclusion that A.D. had refused to cooperate with the court or the Department of Corrections.[3] *See* (Docket #8-9 at 12:10–16).

Nonetheless, an ALJ's failure to articulate good cause for not allowing the confrontation is considered harmless where (1) good cause actually exists; (2) the record reflects good cause; and (3) the finding is "implicit" in the ALJ's ruling. *State ex rel. Simpson v. Schwartz*, 640 N.W.2d 527, 533 (Wis. Ct. App. 2001). Courts evaluate good cause by balancing the

---

[2]The State's argument that "there is no constitutional 'good cause' requirement'" is not well-taken—*Morrissey* explicitly states that due process requires a showing of good cause if the adverse witness is unavailable for cross examination. 408 U.S. at 489.

[3]Notwithstanding the lack of support in the record, this conclusion may well have been correct—the criminal charges were ultimately dropped against Lother, and the record does establish a friendship between the two men. Additionally, as the trial court noted, Lother "was granted an adjournment and could have compelled the appearance of [A.D.] to refute [L.D.'s] statement but chose not to do so." (Docket #1-1 at 6).

"need of the probationer in cross-examining the witness" against "the interest of the State in denying confrontation, including consideration of the reliability of the evidence and the difficulty, expense, or other barriers to obtaining live testimony." *Id.* at 534. Generally, the prosecution "should provide a reason for why it will not make a witness available for cross-examination." *Id.* at 534–35. Notably, however, a showing of unavailability is not necessary if the proffered hearsay "has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule." *Id.* (citing *White v. Illinois*, 502 U.S. 346, 356–57 (2001)); *see also United States v. Pratt*, 52 F.3d 671, 676–77 n.4 (7th Cir. 1995) (explaining that "where hearsay evidence is reliable, [the Seventh Circuit] has been reluctant to find a due process violation" at revocation hearings where the accused is unable to cross-examine the declarant).

Wisconsin recognizes the "excited utterance" exception to the hearsay rule. Wis. Stat. § 908.03(2). This exception permits a hearsay statement in evidence if the statement "relat[es] to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *Id.*; *State v. Huntington*, 575 N.W.2d 268, 273 (Wis. 1998). Here, the critical hearsay statement from A.D.—i.e., his identification of Lother as his shooter—was made after a startling event (a shooting) in relation to the startling event (the identification of the shooter) while the declarant was under the stress or excitement of the event (the shooter had just left, A.D. was on the floor seeking help, and L.D. had yet to call the police).

In evaluating the propriety of the revocation hearing, the Wisconsin Court of Appeals noted:

> [T]he administrator relied on testimony from A.D.'s sister describing statements by A.D. that meet the excited utterances exception to the general rule against hearsay as statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." *See* Wis. Stat. § 908.03(2). Specifically, A.D.'s sister testified that she was upstairs in the residence where the incident occurred; that she heard a "bam-bam" from downstairs and then heard A.D. moaning and saying "help me, help me"; that she went downstairs and found A.D. saying "my leg, my leg"; that she dialed 911; and that A.D. told her that Lother had shot him. This testimony provides a sufficient basis to uphold the administrator's decision.

(Docket #1-2 at 2–3).

A federal court must uphold a state court's conclusions if they are "at least minimally consistent with the facts and circumstances of the case." *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997). As a matter of law, statements falling within the excited utterance exception to the hearsay rule are considered reliable. *See Huntington*, 575 N.W.2d at 273. The Court thus finds, based upon its review of the facts and the law, that the Wisconsin Court of Appeals did not err in upholding the constitutionality of Lother's revocation hearing. Specifically, because L.D.'s hearsay testimony was admissible as an excited utterance, the ALJ's failure to explain good cause for the lack of cross-examination was harmless error. *Simpson*, 640 N.W.2d at 535 n.5 (explaining its conclusion that, in the context of an administrative revocation proceeding, "an ALJ's observance of the Wisconsin Rules of Evidence is sufficient to satisfy the good cause requirement under *Morrissey* and *Gagnon*.").

Lother argues that people can lie under stress, and he proffers a notarized letter from L.D. that states "[A.D.] know[s] you didn't do it but

he felt like if you wouldn't have left him on 12th Street and you would have been the one to bring him home[,] he wouldn't have got shot." (Docket #10-1 at 2). This letter has absolutely no indicia of reliability—not only is it hearsay, but it is self-serving and completely contradicts L.D.'s prior statement made under oath. If Lother is dissatisfied with the reliability of the excited utterance exception to the hearsay rule, it is difficult to see how he can endorse such a baseless and revisionary submission. Moreover, Lother's suggestion that A.D. lied to cover up an accidental gunshot wound (Docket #10 at 16) is specious at best, and wholly unsupported by the record.

In any case, the State did not need to prove beyond a reasonable doubt that Lother shot A.D.—perhaps they could not, and therefore the criminal charges were dropped. To revoke his extended supervision, they simply needed to demonstrate it was more likely than not that Lother shot A.D. This was accomplished, as the Wisconsin Court of Appeals found, by L.D.'s testimony. *See Simpson*, 640 N.W. 2d at 538 n.6 (noting that a hearsay statement "is sufficient to prove a probation violation so long as the hearsay is reliable."). The Court finds that the Wisconsin Court of Appeals did not err in determining that the revocation hearing comported with due process, nor did it uphold an erroneous conclusion unsupported by the facts in the record.

### 3.2 Propriety of State Court's Standard of Review

Lother also contends that the state court, sitting in review, improperly applied the burden of persuasion on him, and did not give de novo review to his legal challenge. This argument is dead on arrival. It is true that, initially, the burden of proof is placed on the State, which has "the burden of proof to establish, by a preponderance of the evidence, that the

client violated the rules or conditions of supervision." Wis. Admin. Code § HA 2.05(6)(f). As the discussion in Section 3.1 demonstrates, this is a relatively low burden.

The ALJ's decision can be appealed to the DHA. *Id.* § 2.05(8), (9). The DHA's decision may be appealed "by a writ of certiorari to the circuit court." *Washington*, 620 N.W.2d at 419. This "is *not* a de novo review." *Id.* (emphasis added). When, as here, the petitioner challenges "whether the evidence was such that [the DHA] might reasonably make the order or determination in question," courts must consider whether "there is substantial evidence to support the department's decision." *Id.* (citations and quotations omitted). Courts "defer to the [DHA]'s determinations." *Von Arx v. Schwarz*, 517 N.W.2d 540, 544 (Wis. Ct. App. 1994) (citations omitted). "On appeal challenging a revocation decision, . . . the probationer bears the burden of proving that the decision was arbitrary and capricious." *Id.* (citations omitted). An agency's decision will be upheld if its conclusion is "based on a logical rationale founded upon proper legal standards." *Id.* (citations and quotations omitted).

Thus, on appeal, the state court did not err when it placed the burden on Lother to show that "no reasonable person could reach the same decision as the ALJ, given the evidence and reasonable inferences drawn from that evidence." (Docket #1-1 at 3). The fact that the Wisconsin Court of Appeals did not squarely address this objection does not bar the conclusion that it was correct in affirming the trial court's order. *Hennon*, 109 F.3d at 335.

4. **CONCLUSION**

For the reasons explained above, the Court finds that Lother's asserted grounds for relief are without merit. Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a

Page 12 of 14
Case 2:19-cv-00981-JPS    Filed 01/24/22    Page 12 of 14    Document 18

certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Petitioner must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). As the Court discussed above, no reasonable jurists could debate whether the petition has merit. The Court must, therefore, deny Petitioner a certificate of appealability.

Finally, the Court closes with some information about the actions that Petitioner may take if he wishes to challenge the Court's resolution of this case. This order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See id.* A party is expected to closely review all

applicable rules and determine what, if any, further action is appropriate in a case.

Accordingly,

**IT IS ORDERED** that Petitioner Marvin D. Lother's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docket #1) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Petitioner's motion for a hearing (Docket #17) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 24th day of January, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge